# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| CONNIE LAWRENCE,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | 3:15-cv-00098-MMD-VPC<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for remand or reversal (#14), defendant's cross-motion to affirm and opposition (#s 17/18), and plaintiff's reply and opposition (#s 19/20). For the reasons set forth herein, the court recommends that plaintiff's motion be denied, and defendant's cross-motion be granted.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On September 15, 2011, Connie Lawrence ("plaintiff") protectively filed a claim for Social Security Disability Insurance ("SSDI") under Title II of the Social Security Act. (Administrative Record ("AR") 181–82.) In May or June of 2012, plaintiff also submitted an application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act.[1] (*Id.* at 183–87.) The record reflects that plaintiff alleged a disability onset date of September 17, 2011 in her SSDI application, and an onset date of September 1, 2011 in her SSI application.[2] (*Id.* at 181, 183.) The Social Security Administration denied plaintiff's applications in the first instance on April 26, 2012, and upon reconsideration on February 7, 2013. (*Id.* at 109–13, 125–33.)

---

[1] The ALJ and plaintiff identify the SSI application date as May 18, 2012 (AR 25; #14 at 2), while the application contained in the record is dated June 20, 2012 (AR 183).
[2] The ALJ appears to have split the difference, and assumed an onset date of September 14, 2011. (AR 25.)

On July 31, 2013, plaintiff and her attorney appeared at a hearing before Administrative Law Judge ("ALJ") Eileen Burlinson. (*Id.* at 38–58.) The ALJ issued a written decision on August 28, 2013, finding that plaintiff had not been disabled at any time between September 14, 2011 and the date of the decision. (*Id.* at 25–32.) Plaintiff appealed, and the Appeals Council denied review on December 19, 2014. (*Id.* at 1–3.) Accordingly, the ALJ's decision became the final decision of the Commissioner ("defendant").

Having exhausted all administrative remedies, plaintiff filed a complaint for judicial review on March 18, 2015 (#3). In her motion for remand or reversal, plaintiff contends that the ALJ improperly evaluated and weighed the medical opinions of Drs. Floreani and Villaflor (#14 at 13–18), and articulated legally insufficient reasons for discounting plaintiff's credibility (*id.* at 18–21). Due to these alleged errors, plaintiff argues that the ALJ's decision lacks the support of substantial evidence. (*Id.* at 12.)

## II.   STANDARD OF REVIEW

The initial burden of proof to establish disability in a claim for SSDI and SSI benefits rests upon the claimant. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To satisfy this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

This court has jurisdiction to review an ALJ's decision to deny a claim for benefits after the claimant has exhausted all administrative remedies. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012). The court must affirm the ALJ's decision unless it rests on legal error or is unsupported by substantial evidence in the administrative record. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). The substantial evidence standard is not onerous. It is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

Although the ALJ need not discuss every piece of evidence in the record, she cannot ignore or omit evidence that is significant or probative. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012). The ALJ's discussion must adequately explain the decision in light of such evidence. "The ALJ, not the district court, is required to provide specific reasons for rejecting [the evidence.]" *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (specifically discussing rejection of lay testimony). The district court's review is thus constrained to the reasons asserted by the ALJ. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision; it "may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation omitted). Where "the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (internal quotation omitted). The ALJ alone is responsible for determining credibility and resolving ambiguities. *Garrison*, 759 F.3d at 1010.

### III.   DISCUSSION

**A.   SSDI claims are evaluated under a five-step sequential process.**

The Commissioner follows a five-step sequential process for determining whether a claimant is "disabled" for the purposes of SSDI and SSI. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one directs the ALJ to determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If so, the claimant is not disabled and the Commissioner denies the claim. *Id.* §§ 404.1520(b), 416.920(b).

The second step requires the ALJ to determine whether the claimant's medically determinable impairment is "severe." *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "Severe" impairments are those that significantly limit the claimant's physical or mental ability to do basic work activities. *Id.* §§ 404.1520(c), 416.920(c). The Commissioner will deny the claim if the claimant lacks a severe impairment or combination of impairments. *Id.*

1    At step three, the claimant's impairment is compared to the impairments listed in the Agency's regulations. *Id*. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *id*. Pt. 404, Subpt. P, App. 1 ("List of Impairments"). The List of Impairments "define[s] impairments that would prevent an adult, regardless of his [or her] age, education, or work experience, from performing *any* gainful activity, not just substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (quoting 20 C.F.R. § 416.925(a)) (emphasis in original). Where the claimant's impairment is on the list, or is equivalent to a listed impairment, and the claimant also meets the corresponding durational requirement, the claimant is deemed disabled. 20 C.F.R. §§ 404.1520(d); 416.920(d). However, to match a listing, an impairment "must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530 (emphasis in original).

If the Commissioner does not find disability at step three, review of the claim proceeds to step four. There, the ALJ considers whether the claimant can perform past relevant work despite the severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. *Id*. §§ 404.1520(e), 416.920(e). The ALJ will find that the claimant can return to past relevant work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation omitted).

In making the step four determination, the ALJ considers the claimant's residual functional capacity ("RFC") and the physical and mental demands of the work previously performed. 20 C.F.R. §§ 404.1520(f), 416.9209(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). The RFC is the most the claimant can still do despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). To evaluate the claimant's RFC, the ALJ must assess all of the relevant evidence, including medical reports and descriptions by the claimant and others of the claimant's limitations. *See id*. §§ 404.1545(a)(3); 416.945(a)(3). The ALJ is not, however, required to accept as true every allegation the claimant offers regarding his or her limitations. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). The ALJ must follow a two-step inquiry where

the claimant alleges subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007); *see also* SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996). First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (internal quotation omitted). Second, where the first test is met and no evidence suggests that the claimant is a malingerer, the ALJ may reject the claimant's allegations only by articulating "clear and convincing" reasons for doing so. *Id*.

The "clear and convincing" standard is the most demanding standard in Social Security case law, *Garrison*, 759 F.3d at 1015, and it requires the ALJ to "specifically identify the testimony she or he finds not to be credible and [to] explain what evidence undermines the testimony," *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). The ALJ must therefore cite to the record and discuss specific evidence therein. *See Vasquez v. Astrue*, 572 F.3d 586, 591–92, 592 n.1 (9th Cir. 2008); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). "[S]imply reciting the medical evidence in support of his or her [RFC] determination" will not suffice. *Brown-Hunter v. Colvin*, 798 F.3d 749, 755 (9th Cir. 2015). The focus, however, is ultimately upon the reviewing court. The credibility determination must be "'sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.'" *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001)).

Permissible bases for finding the claimant not credible include conflicts between his or her allegations and daily activities, *Orn*, 495 F.3d at 636, an "unexplained or inadequately explained failure to seek treatment," *Molina*, 674 F.3d at 1112, and a lack of objective medical evidence, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain [and limitations] testimony, it is a factor that the ALJ can consider in his [or her] credibility analysis."). Medical opinions are also probative. 20 C.F.R. §§ 404.1529(c), 416.929(c) (describing factors relevant to credibility); *see also Rollins*, 261 F.3d at 857 (noting that the ALJ appropriately considered medical opinions contradicting claimant's pain testimony in assessing claimant's credibility).

If step four demonstrates that the claimant cannot do the work he or she did in the past, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs available in the national economy. 20 C.F.R. §§ 404.1560(c), 416.960(c). There, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). The ALJ will typically reference "the grids," under which a finding of disability may be directed, and also consider the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). Where the grids do not direct a finding of disability, the ALJ must identify other occupations that the claimant can perform and which are available in significant numbers in the claimant's region or in several regions of the United States. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1560(c), 416.960(c). If the ALJ establishes that the claimant's RFC and transferable skills allow him or her to perform other occupations, he or she is not disabled. 20 C.F.R. §§ 404.1566, 416.966. Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, he or she is disabled and entitled to benefits. *Id.* §§ 404.1520(g), 416.920(g).

**B.     The ALJ followed the five-step process and concluded that plaintiff was not disabled.**

In reviewing plaintiff's claims for benefits, the ALJ followed the five-step process described above. The ALJ first determined that plaintiff had not engaged in substantial gainful activity since September 14, 2011, the alleged onset date. (AR 27.) At step two, the ALJ found that plaintiff has two severe impairments which limit her ability to perform basic workplace activities: chronic obstructive pulmonary disease ("COPD") and asthma. (*Id.*) The ALJ also considered plaintiff's history of cervical dysplasia, status-post ACL repair with minimal knee pains, bilateral hand pain of unknown etiology, restless leg syndrome, depression, and anxiety, but concluded that none of those impairments are severe. (*Id.* at 27–28.)

At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of those on the List of Impairments. (*Id.* at 27–28) Here, the ALJ noted that "no acceptable medical source ha[d]

1  mentioned findings equivalent in severity to the criteria of any listed impairment, individually or
2  in combination," as related to plaintiff's COPD or other ailments. (*Id.* at 28.)

3        The ALJ proceeded to step four and made several findings. To begin, the ALJ concluded
4  that plaintiff's RFC permits her to perform light work as defined by 20 C.F.R. §§ 404.1567(b)
5  and 416.967(b), but with the following additional restrictions: plaintiff can only occasionally
6  perform postural activities, and should avoid temperature extremes, humidity, pulmonary
7  irritants, and hazards, including working at heights or operating dangerous moving machinery.
8  (*Id.*) Next, the ALJ found that plaintiff's impairments could be expected to cause the symptoms
9  alleged, but that her statements regarding the intensity, persistence, and limiting effects of those
10 symptoms were not fully credible. (*Id.* at 27.) The ALJ cited three reasons for discounting
11 plaintiff's credibility, including a lack of strong support from the objective medical evidence,
12 improvements in plaintiff's symptoms with treatment, and inconsistencies between plaintiff's
13 allegations and daily activities. (*Id.* at 29–31.) Finally, based on the evidence in the record and
14 the testimony of a vocational expert, the ALJ concluded that plaintiff is capable of performing her
15 past relevant work as a retail cashier, loan clerk, and administrative assistant. (*Id.* at 31–32.)

16       A claimant is deemed not disabled at step four if able to perform past relevant work. 20
17 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3). Thus, having found that plaintiff could perform her
18 past relevant work, the ALJ held that plaintiff was not disabled and denied her claims. (AR 32.)

19 **C.  The ALJ permissibly discounted the opinions of Drs. Floreani and Villaflor.**

20       Plaintiff first contends that the ALJ erred in her treatment of the medical opinions
21 prepared by Dr. Anthony Floreani and Dr. Elsie Villaflor.

22       **1.  Dr. Anthony Floreani**

23 Dr. Floreani examined plaintiff on February 2, 2012. (*Id.* at 351.) The ALJ described the
24 doctor's findings as follows:

25 > On exam, the claimant exhibited normal breath sounds posteriorly with no rhonchi.
26 > Pulmonary function tests reviewed by Dr. Floreani showed normal expiratory time with an FEV1 of 1.48 and a post-bronchodilator FEV1 of 1.77 liters, showing
27 > significant improvement after bronchodilator treatment. Dr. Floreani noted that while she did have moderate airflow obstruction, her symptoms appeared to be out
28 > of proportion with her lung function. Dr. Floreani opined the claimant could

      perform work at the sedentary exertional level with never crawling or climbing ramps or stairs. She could occasionally climb ladders, ropes, or scaffolds, balance, stoop, kneel, or crouch. She would require an avoidance of hazards, temperature extremes, chemicals, dust, and noise.

(*Id.* at 30 (citing AR 350–63).) Upon review, the ALJ accorded "partial weight" to the climbing, balancing, stooping, kneeling, crouching, and environmental limitations, and "little weight" to the restrictions for a sedentary exertional level with never crawling or climbing ramps or stairs. (*Id.*) The ALJ reasoned that those restrictions were "excessive in light of the clinical exam findings, including the pulmonary function testing showing significant improvement after bronchodilator treatment." (*Id.*)

      Plaintiff maintains that the ALJ erred in a variety of ways. First, plaintiff argues that the ALJ improperly represented that Dr. Floreani had restricted plaintiff to a sedentary exertional level, when in actuality "Dr. Floreani's opinion indicates that [plaintiff] would be limited to a less than sedentary [RFC] as her combined ability to sit and stand could be equal to less than eight hours in an eight-hour work day." (#14 at 14.) Here, plaintiff oversimplifies the definition of sedentary work. The regulations define a sedentary exertional level as involving sitting with occasional walking or standing, along with the ability to lifting no more than ten pounds at a time. 20 C.F.R. §§ 404.1567(a), 416.967(a). SSR 83-10 further provides that "at the sedentary level of exertion, periods of standing or walking should generally total *no more than about* 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours. . . ." SSR 83-10, 1983 WL 31251, at *5 (1983) (emphasis added). Thus, the ability to stand or walk for two hours is not an absolute requirement. Dr. Floreani opined that plaintiff can sit for six or more hours, and stand or walk for less than two hours. (AR 350.) Those restrictions are consistent with the requirement that a worker in a sedentary job "be able to sit through most or all of an eight-hour day." *See Tackett*, 180 F.3d at 1103. Accordingly, the ALJ did not misrepresent the opinion.[3]

---

[3] Even if Dr. Floreani had restricted plaintiff to less than sedentary work, and the ALJ had mischaracterized the restriction, the ALJ's error would have been harmless given the her decision to accord the restriction little weight. Courts in the Ninth Circuit "will not reverse the decision of the ALJ for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038.

8

Plaintiff next maintains that the ALJ erred by discussing just one of the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c) in her evaluation of Dr. Floreani's opinion. (#14 at 14.) Pursuant to 20 C.F.R. §§ 404.1527(c)(1)–(6) and 416.927(c)(1)–(6), medical opinions are to be weighed according to the existence of an examining relationship; the length, nature, and extent of a treating relationship; the evidence supporting the opinion; consistency between the opinion and other evidence of record; the specialization of the physician; and any other relevant factors. As a threshold matter, the court notes that the ALJ addressed at least three of these factors. The ALJ observed that Dr. Floreani examined plaintiff once, in February 2012, at the request of the State agency; she discussed evidence that supported Dr. Floreani's opinion; and she noted inconsistencies between the opinion and clinical findings. (AR 29–30.) Further, while the regulations require the ALJ to *consider* each factor, it does not follow that an ALJ must *discuss* each factor. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Unless we give a treating source's opinion controlling weight . . . , we consider all of the following factors in deciding the weight we give to any medical opinion."). Plaintiff has not cited, and the court has not found, authority in which an ALJ was deemed to have erred solely because his or her decision failed to discuss all of the enumerated factors.

Third, plaintiff contends that Dr. Floreani's opinion should have been given controlling weight, or, in the alternative, more weight than any other medical opinion in plaintiff's file. Within the administrative record, an ALJ may encounter medical opinions from three types of physicians: treating, examining, and nonexamining. *Garrison*, 759 F.3d at 1012. As a general rule, the greatest weight is given to a treating physician's opinion, while the opinion of an examining physician is given more weight than that of a nonexamining physician. *Id.* Moreover, a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record," is entitled to controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). The ALJ is not, however, bound by the conclusions of any particular physician. The ALJ can reject a treating or examining physician's uncontradicted opinion for "clear and convincing" reasons, or their contradicted

1  opinion for "specific and legitimate reasons," supported by substantial evidence. *Lester v.
2  Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

3  An ALJ provides specific and legitimate reasons by articulating a detailed and thorough
4  summary of the facts and conflicting medical evidence, stating an interpretation thereof, and
5  making findings. *Garrison*, 759 F.3d at 1012. In supporting a decision to accept certain medical
6  opinions over others, the ALJ may cite contradiction, inconsistency with the evidence, and
7  consistency of the accepted opinions with the administrative record as a whole. *See Tommasetti
8  v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d
9  1190, 1195 (9th Cir. 2004). However, "[t]he opinion of a nonexamining physician cannot by
10 itself constitute substantial evidence that justifies the rejection of the opinion of either an
11 examining physician or a treating physician." *Lester*, 81 F.3d at 831.

12 Dr. Floreani was not a treating physician; he examined plaintiff on just one occasion. (AR
13 29–30.) An examining physician's opinion is not entitled to controlling weight. *See* 20 C.F.R. §§
14 404.1527(c)(2), 416.927(c)(2). Further, plaintiff ignores the discretion ALJs enjoy in weighing
15 medical opinions; although an examining physician's opinion is generally given more weight than
16 that of a nonexamining physician, the rule is not ironclad. "An ALJ may reject the testimony of
17 an examining, but nontreating physician, in favor of a nonexamining, nontreating physician when
18 he [or she] gives specific, legitimate reasons for doing so, and those reasons are supported by
19 substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1985). In short, Dr.
20 Floreani's status as an examining physician, alone, does not mean that his "opinion should have
21 been given more weight than all of the other opinion evidence in the file." (#14 at 15.)

22 Finally, plaintiff maintains that the ALJ failed to support her decision to discount Dr.
23 Floreani's opinion with a legally sufficient reason. (*Id.*) Dr. Floreani's opinion regarding
24 sedentary work is contradicted by other evidence in the record, including the opinions of
25 examining physician Dr. Gerson and the state agency medical consultants. (*See* AR 30, 65–70,
26 99–105, 378–84.) Thus, to reject Dr. Floreani's opinion, the ALJ must have articulated specific,
27 legitimate, and supported reasons for doing so. *See Lester*, 81 F.3d at 830–31.

28

The ALJ met that standard. A conflict between a physician's opinion and his clinical findings is a specific and legitimate reason to discount the physician's opinion. *See, e.g.*, *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009) (contradiction between a treating physician's opinion and treatment notes is a valid reason to reject the opinion); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (same); *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (conflict between physician's treatment notes and disability finding is a valid reason to reject opinion); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (an ALJ need not accept physician opinion that "is brief, conclusory, and inadequately supported by clinical findings"). Here, the ALJ noted the conflict, and supported her decision to accord the sedentary work restriction little weight by summarizing Dr. Floreani's findings. (*See* AR 29–30.) In interpreting the pulmonary function test, Dr. Floreani specifically noted plaintiff's "normal expiratory time," and that her moderate airflow obstruction significantly improved after bronchodilator, "suggesting partial reversibility." (*Id.* at 353–55). He also observed that plaintiff's symptoms appeared out of proportion to her lung function, "as she states in the beginning of her history that she can do almost nothing without becoming short of breath but then states at the end of her history that she is able to walk and has to walk to be able to get around town and it was difficult for her to quantitate [sic] just exactly how much she was walking." (*Id.* at 354.) The ALJ reasonably and permissibly concluded that Dr. Floreani's relatively mild findings failed to support a restriction to sedentary work. (*Id.* at 30.)

### 2. Dr. Elsie Villaflor

Dr. Elsie Villaflor, a State agency medical consultant, reviewed the record in March, 2012. (*Id.* at 66.) A second medical consultant, Dr. Julius Villaflor, reviewed the record in February, 2013. (*Id.* at 100.) Dr. Elsie Villaflor opined that plaintiff's RFC included the following exertional limitations: occasional lifting or carrying of up to twenty pounds; frequent lifting or carrying of up to ten pounds; standing or walking for a total of four hours in an eight-hour workday; and sitting for about six hours in an eight-hour work day. (*Id.* at 68–69.) Dr. Julius Villaflor reached the same conclusion, except that he restricted plaintiff to standing or walking for six hours, rather than four. (*Id.* at 103.) In her decision, the ALJ described the

opinions as restricting plaintiff to a light exertional level of work, and accorded those portions partial weight. (*Id.* at 30.)

As before, plaintiff contends that the ALJ misrepresented a medical opinion. Specifically, plaintiff argues that the restrictions Dr. Elsie Villaflor prescribed would not allow plaintiff to perform light work. (#14 at 16.)

As defined in the regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, *or* when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b). A full range of light work requires standing or walking for up to two-thirds of the workday. *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984); SSR 83-10, 1983 WL 31251, at *6.

Dr. Elsie Villaflor restricted plaintiff to walking or standing no more than four hours in an eight-hour workday, less than the number of hours required for a full range of light work. (AR 69.) Therefore, the court therefore agrees that, by describing her opinion as prescribing light work, the ALJ's discussion is misleading. However, to the extent ALJ erred, the error was harmless. Courts in the Ninth Circuit "will not reverse the decision of the ALJ for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038. Consistent with the court's duty to review the ALJ's decision for substantial evidence rather than affirm upon its own independent findings, the reviewing court must exercise caution when relying on the harmless error doctrine. *See Stout*, 454 F.3d at 1054. Yet where a reviewing court can "confidently conclude" that no reasonable ALJ would have reached a different determination by considering the omitted evidence, the ALJ's error is harmless. *Robbins*, 466 F.3d at 885.

The ALJ accorded Dr. Elsie Villaflor's opinion just partial weight, and also based her RFC determination on the opinions of Dr. Julius Villaflor and Dr. Gerson. (AR 29–30.) As discussed above, the ALJ is not bound by the opinion of any particular physician, least of all that

of a nonexamining physician. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") Dr. Gerson examined plaintiff in January 2013, ten months after Dr. Elsie completed her review of the record. (AR 30.) Dr. Gerson's findings appear generally unremarkable. With respect to plaintiff's pulmonary condition, he found that plaintiff's lungs were clear to auscultation, with no wheezes, rhonchi, or rales. (*Id.* at 380.) Plaintiff's breath sounds were mildly to moderately decreased in the upper and lower lung fields bilaterally, and forced expiration was moderately decreased, but her expiratory phase was within normal limits and Dr. Gerson noted no chest wall deformity. (*Id.*) Plaintiff exhibited 96% oxygen saturation on room air while sitting, 94% saturation after ambulation, and 95% saturation after a minute's rest. (*Id.*) Plaintiff exhibited no shortness of breath with speaking. (*Id.*) With respect to exertional limitations, Dr. Gerson opined that plaintiff could stand or walk up to six hours in an eight-hour workday. (*Id.* at 382.) Dr. Julius Villaflor, reviewing plaintiff's record one month her examination with Dr. Gerson, reached the same conclusion. (*Id.* at 103.)

In sum, the ALJ's decision to restrict plaintiff to a full range of light work is supported by substantial evidence. Had the ALJ correctly characterized Dr. Villaflor's opinion as limiting plaintiff to a restricted range of light work, or even sedentary work, the court is unpersuaded that her RFC determination would be altered. Accordingly, plaintiff is not entitled to remand or reversal on this ground.

**D.     The ALJ permissibly discounted plaintiff's subjective pain allegations.**

Finally, plaintiff maintains that the ALJ failed to articulate legally sufficient reasons for finding plaintiff's testimony as to the intensity, persistence, and limiting effects of her symptoms not fully credible. (#14 at 18.) Despite noting Dr. Floreani's observation that plaintiff's symptoms appeared out of proportion to her lung function, the ALJ made no explicit finding that plaintiff was suspected of malingering. (*See* AR 30–31 (citing AR 354).) Thus, the ALJ was required to provide clear and convincing reasons for rejecting plaintiff's testimony. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011); *Lingenfelter*, 504 F.3d at 1036.

13

Plaintiff argues that the ALJ's credibility finding amounts to a "boilerplate statement," and that she articulated just one reason to discount plaintiff's testimony. (#14 at 18, 20.) The use of boilerplate language is typically not a cause for remand, provided that the ALJ goes on to identify the testimony that is not credible and why. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2004). In addition, a close reading of the ALJ's decision reveals that the ALJ articulated three reasons for the adverse credibility determination, which the court considers in turn.

The ALJ first concluded that the objective medical evidence fails to provide strong support for plaintiff's allegations, and proceeded to discuss that medical evidence at considerable length. (AR 29–30.) The court finds the reason to be clear and convincing. Plaintiff, notably, does not point to errors in the ALJ's analysis of the medical evidence, instead relying on the rule that a lack of medical evidence cannot be the sole basis for an adverse credibility finding. (#14 at 20 (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).) In so arguing, plaintiff fails to recognize that the lack of supporting medical evidence is *not* the sole reason the ALJ discounted her credibility; two other reasons are cited. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his [or her] credibility analysis." *Burch*, 400 F.3d at 681. Thus, the ALJ has not erred unless the court finds the remaining reasons to be untenable.

The second reason the ALJ found plaintiff's allegations to be less credible was "the repeated reports" that plaintiff's symptoms significantly improved with treatment. (AR 31.) An ALJ may properly discredit a claimant's testimony of a disabling impairment where his or her condition can be remedied or controlled by medication. *See* 20 C.F.R. §§404.1529(c)(3), 416.929(c)(3); *Tommasetti*, 533 F.3d at 1040 (a claimant's favorable response to conservative treatment undermines her testimony regarding the disabling nature of his pain); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("[E]evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment."); *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The

ALJ's decision identifies several instances in which plaintiff's symptoms improved with relatively conservative treatment: "Although the claimant was hospitalized in September 2011 and October 2011 for asthma and COPD exacerbation, in each instance the claimant showed significant improvement with bronchodilator therapy." (AR 29.) "In December 2011, the claimant reported her symptoms were relieved with oxygen use." (*Id.*) In February 2012, Dr. Floreani conducted pulmonary function tests that showed "significant improvement after bronchodilator treatment." (*Id.* at 29–30.) Plaintiff has advanced no theory as to why these improvements do not undermine her allegations. In fact, plaintiff fails to address this reason altogether. Thus, the court finds plaintiff's improvements a clear and convincing reason to discount her credibility.

Third, the ALJ noted inconsistencies between plaintiff's allegations and her reported activities. (*Id.* at 29, 31.) The Ninth Circuit has warned ALJs to "be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Still, a claimant's daily activities can provide a clear and convincing reason for an adverse credibility finding where the claimant's level of activity contradicts his or her testimony, or the activities "meet the threshold for transferable work skills." *Orn*, 495 F.3d at 639.

Here, the ALJ reasoned that plaintiff's reported ability to cook, clean, shop, read, vacuum, use public transportation, socialize with her sister, and visit California for two weeks each year was inconsistent with her testimony that she can stand for no more than a few minutes at a time, can lift no more than five pounds, has no difficulty sitting, and experiences shortness of breath, coughing, and fatigue. (AR 29.) However, the ALJ failed to explain how the activities, performed as plaintiff described, are at odds with her claimed limitations. Reading is entirely consistent with plaintiff's testimony, as is socializing with her sister—plaintiff's medical source statement clarifies that she usually does so by phone. (*Id.* at 232.) The ALJ correctly notes that

plaintiff is able to do some simple chores, but the record suggests that plaintiff does these activities slowly and with frequent breaks. (*See id.* at 230.) As for her ability to travel to California, those trips appear to mostly involve sitting and watching movies, and plaintiff is picked up and driven there by her friend. (*Id.* at 49.) Accordingly, absent more detailed explanation from the ALJ, the supposed inconsistencies between plaintiff's activities and testimony do not amount to a clear or convincing, reason to discount plaintiff's credibility. *See Garrison*, 759 F.3d at 1016.

Where an ALJ commits an error in part of his or her credibility determination, the error is harmless so long as other valid reasons demonstrate there is substantial evidence supporting the decision. *Molina*, 674 F.3d at 1115. Here, in light of the other two reasons cited, the ALJ's reliance on plaintiff's daily activities "does not 'negate the validity'" of her decision to discount plaintiff's credibility. *Carmickle*, 533 F.3d at 1163 (quoting *Batson*, 359 F.3d at 1197) (upholding the ALJ's decision despite finding two of the four reasons for an adverse credibility determination invalid). Thus, the court recommends that the finding remain undisturbed.

## IV.   CONCLUSION

Based on the foregoing, the court concludes that substantial evidence supports the ALJ's determination of nondisability. The ALJ did not err in her evaluation of Drs. Floreani or Villaflor's opinions, and the error committed in assessing plaintiff's credibility was harmless. Thus, the court recommends that plaintiff's motion for remand or reversal (#14) be denied and defendant's cross-motion to affirm (#17) be granted.

1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.   This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**V.   RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that plaintiff's amended motion for remand or reversal (#14) be **DENIED** and defendant's cross-motion to affirm (#17) be **GRANTED**;

**DATED**: February 11, 2016.

_____
**UNITED STATES MAGISTRATE JUDGE**